murder, and assessed a penalty of five years in the penitentiary.

In the transcript forwarded to this court we find neither a judgment of conviction nor notice of appeal, in the absence of which this court is without jurisdiction to entertain the appeal. See McCallan v. State, 112 Tex.Cr.R. 173, 15 S.W.2d 1049, on necessity of judgment. On necessity of notice of appeal, see Art. 827, C.C.P.1925, Vernon's Ann.Tex.C.C.P., Vol. 3, art. 827, and cases cited thereunder.

The appeal is dismissed.

### BURNEY v. BURNEY et al.

#### No. 14743.

Court of Civil Appeals of Texas.
Fort Worth.
Jan. 11, 1946.

Rehearing Denied Feb. 8, 1946.

Thompson, Walker, Smith & Shannon, of Fort Worth, for appellant.

Kampmann & Burney, of San Antonio, and Samuels, Brown, Herman & Scott, of Fort Worth, for appellees.

McDONALD, Chief Justice.

This suit involves the will of I. H. Burney, a long-time resident of Fort Worth, who died in 1940. The will covers twenty-five typewritten pages of the statement of facts, and contains some features not usually found in wills. In addition to the paragraphs in which specific disposition is made of the testator's property, there are many paragraphs of an explanatory nature in which are set out in a somewhat informal manner the views of the testator with reference to the handling of his estate, the objects desired to be accomplished by the will, and advice to the executors and to the beneficiaries of the will concerning methods of managing and disposing of properties of the estate. For this opinion to be clear to a reader who had not had occasion to study the will in its entirety it would be necessary to set out the full text of the will, but we shall not do that since it would result in an opinion of such great length.

Generally speaking, the will bequeathed a half interest in the community property, with the exception of the homestead and certain furniture and personal effects, to various relatives of the testator, and at least suggested, if it did not direct, that the personal property of the community be divided soon after his death. The will did not dispose of Mrs. Burney's interest in the community. Mrs. Burney survived her husband.

The suit principally concerns certain provisions of the will which undertook to guarantee that Mrs. Burney should have a net income of not less than $12,000 per year.

In the first numbered paragraph of the will are numerous suggestions of a directory nature, offering advice to the executors and trustees as to the management of the estate.

The second numbered paragraph of the will bears the title "Some explanatory recitals, observations and suggestions probably unnecessary but harmless." In this paragraph it is recited that the testator recently prepared a tentative will, and that, after discussion with his wife, they had agreed that the tentative will could be improved. The testator says in this paragraph that the chances are about 100 to 1 that he will predecease his wife, and that the dominant idea with him is to consider first the comfort and well being of his wife after his death. He declares that the most important part of his will is the provision, to quote, "whereby I guarantee to my wife a twelve thousand dollar annual net income after my death, and pledge all my interest in our community real estate and the rents therefrom to secure said income."

The testator goes on to declare that his wife disfavored the idea of a life estate in real estate being left to either, with reversion over to relatives, and to quote, "it will be seen hereinafter that in lieu of such life estate in certain real property, as in said tentative will, I have adopted the plan of a guaranteed income to my wife,

based on the idea that my Executors shall hold, in large part at least, my part of the real estate until her death, and collect rents thereon and disburse same to my said relatives with due regard to the protection of my wife on such guaranty."

In the third numbered paragraph of the will it is provided that the home of the testator and his wife and certain specified articles of personal property shall go to her. After making reference to certain property which had been placed in trust for the wife's benefit during the testator's lifetime, and after expressing the hope that his wife by her will would leave half of the unused portion of such trust property to the testator's relatives, he says: "Of course this plan will not and must not affect my wife's spending and it is my desire that she shall always live well and comfortably and spend reasonably, and hence the guaranty to her of a twelve thousand dollar annual net income."

Subdivision (c) of numbered paragraph 3 reads as follows: "I give to my wife the guaranty of a 'net income annually' for each calender year of her life beginning with January 1st after my death of $12,000.00, secured by a pledge of all my interest in the community real estate as of the date of my death as well as all rents and income therefrom, and this guaranty shall also cover the possible decline or devaluation of the 'dollar,' to the extent that after my death if, for any future calendar year of my wife's life that the purchasing power or value of the dollar shall be shown, by Treasury Department at Washington and other reliable statistics, to have declined as much as ten per cent in comparison with its value for the year 1940, the amount of such decline shall be paid for each such year in addition to the $12,000.00. Minor fluctuations under ten per cent would be uncertain of accurate ascertainment and are not to be considered, and no fluctuation upward, large or small, is to be considered. To make this my guaranty more sure I herein forbid the sale during the life of my wife of any of my interest in community real estate without her consent and joinder therein, thus preventing the reduction of the income sacredly pledged to meet this guaranty. Of course, I really hope that my Executor-Trustees nor my wife ever have to resort to this guaranty for I actually believe her own income from her one-half interest in the community property and

from the trust property will as at present continue to give her an annual net income of Twelve Thousand Dollars; and finally much more, but I realize this guaranty might become of crucial importance to her, and I know the total net income from all the community real property and the Trust property now much more than $12,000.00 can never fall below $12,000.00, without a collapse of all values or of our entire property system in which event the same result would follow if the property was at present worth a million dollars with income accordingly. But there must be mutuality of interest in and treatment of this guaranty. If my wife should sell a large portion of the property from which her income is derived, this would be inconsistent and hence whatever annual reduction of her income, if any, results from her sale of any of her interest in community real estate will be deducted from the annual liability under this guaranty. In other words she will after such sale of real estate be conclusively considered as receiving at least an equal amount of income from the proceeds of such sale or sales as the annual net receipts theretofore from the properties sold."

The trust property referred to in the paragraph just quoted consisted of real and personal property, held and managed by Henry P. Burney as trustee, amounting in value to approximately a hundred thousand dollars. In previous portions of the will the testator had declared this property to be the separate property of the wife.

In subdivision (d), immediately following, bequests are made to certain relatives of the testator, "subject, of course, to the disposition and guaranty already hereinabove set out, and subject to be held and managed, traded, exchanged or sold by my Executor-Trustees during their administration."

Later in the same subdivision it is provided that income from the real property left to such relatives shall be paid to the relatives, "subject to my guaranty that my wife's net income for every calendar year of her life shall not be less than $12,000.00." It is clear from the will that neither the personal property nor the income from personal property left to the testator's relatives was to be charged with the guaranty of a $12,000 income to the wife.

The fourth numbered paragraph bears the title "Generalities." It contains the two following references to the so-called guaranty.

"Of course my Executors will require their Executive Agent bookkeeper to keep a full, careful and accurate account on said $12,000.00 annual income guaranty from year to year, and my wife will do the same."

"By 'Net Annual Income' as herein used, as coming from Rents, Interests, and Dividends of Assets, I mean the remaining annual income after all property expenses reasonably necessary or expenses incident to such income are paid, as for instance all taxes of every kind (including advalorem taxes, income taxes, and other taxes), all cost of reasonable insurance on the assets, all reasonable repair and upkeep cost on improvements, to keep same in good tenantable condition, and all necessary or reasonable salary or wage charges, and the like. But capital gains and losses and depreciation are not to be taken into account."

We have either quoted or given the substance of all provisions of the will relating to the guaranty of the $12,000 to Mrs. Burney.

This suit was brought by Mrs. Burney, individually and in her capacity as independent executrix and trustee under the will. Named as defendants were the other executors and trustees, and the relatives of Mr. Burney who were beneficiaries of the will. The petition calls upon the court to construe the will and to declare the rights, duties and obligations of the several parties to the suit, and to answer a number of specific questions, the nature of which will be reflected in our discussion of the various points of error.

Trial was to the court without a jury. Separate findings of fact and conclusions of law were filed by the court. Mrs. Burney was dissatisfied with the judgment, and has appealed, presenting thirteen points of error. Appellees also assert error under four counterpoints. We shall first discuss appellant's points of error.

Following the death of Mr. Burney the wife disposed of personal property belonging to her valued at some forty thousand dollars by placing it in a trust for the benefit of certain of her relatives. As a result she suffered a loss of income. The trial court held that the portion of her property so disposed of, and the income therefrom, should be considered as a part of her estate in determining whether she had a claim against Mr. Burney's share of the community real estate under the guaranty provisions of the will. Appellant complains of this ruling under her first point.

When the contentions of the parties in this respect are boiled down they are in effect these: Mrs. Burney contends that she is entitled to look to the guaranty for an income of $12,000 per year, even though she has disposed of some of her income producing personal property. Appellees argue that the trial court was correct in holding that Mrs. Burney should be charged, in determining whether she has a net income of $12,000 per year within contemplation of the guaranty provisions, with the income that she might have received had she not disposed of such personal property. Appellees especially rely on the following provisions: "But there must be mutuality of interest in and treatment of this guaranty. If my wife should sell a large portion of the property from which her income is derived, this would be inconsistent and hence whatever annual reduction of her income, if any, results from her sale of any of her interest in community real estate will be deducted from the annual liability under this guaranty. In other words she will after such sale of real estate be conclusively considered as receiving at least an equal amount of income from the proceeds of such sale or sales as the annual net receipts theretofore from the properties sold."

Mrs. Burney argues that the provisions just quoted limit her rights under the guaranty only in the event she should sell her share in some of the community realty, and that any sale by her of her personal property, although resulting in a loss of income, could not serve to defeat her right to look to the guaranty to keep her income at the $12,000 level.

■ Our task is to ascertain the intention of the testator by looking to all of the language of the will. When we do this we find that the testator expected that his wife would have an income of more than $12,000 per year from her separate estate and from her share of the community, and that he predicted that the guaranty provisions of the will would

never have to be invoked. It is clear that he was providing for the unexpected. It is apparent that he contemplated that his wife would continue to receive the income from her separate estate and her share of the community, and it is difficult to believe that he had any idea that she would reduce the income from her estate by giving her property to her relatives, and that she would in turn call on Mr. Burney's share of the community realty for recoupment of her loss of income. The effective result of Mrs. Burney's acts was to divert income which would have gone to Mr. Burney's relatives from them to her own relatives who were made the beneficiaries of the trust she created. To say that Mr. Burney intended to charge her with the consequences of disposing of her sources of income only in the event of sale of realty is to give the will too narrow a construction, and is to defeat the meaning of the will as a whole by giving too great weight to a single clause. The effect of Mr. Burney's will was to create a status of guarantor and guarantee. There descended upon Mrs. Burney some obligations by reason of becoming the beneficiary of a guaranty. While it may not be precise to refer to the will as a contract of guaranty, we may nevertheless be aided in our search for the testator's intention by inquiring into the rules of law governing contracts of guaranty.

"A guarantor may be discharged or released by a breach of the contract of guaranty, or, at least to the extent of the injury, by an act or omission of the guarantee, in breach of his duty, that increases the guarantor's risk or otherwise injures his rights; but he is not released by the guarantee's failure to do something with regard to which he owes no duty to the guarantor." 38 C.J.S., Guaranty, § 67, p. 1228.

The testator declares in his will, and the record before us bears out the accuracy of his statements and the soundness of his predictions, that in all likelihood the wife will have an income of more than $12,000 from her separate estate and from her share of the community, but he declares it to be his primary purpose that the wife shall have an income of such amount by resorting, if need be, to the husband's share of the community realty. He also declares, however, that there must be mutuality in and treatment of the guaranty, and that if the wife should sell a large portion of the property from which her income is received it would be inconsistent.

■ We do not hold that she did not have the right to dispose of her income producing personal property if she wished, but we do hold that such an act was inconsistent with the guaranty relationship created by the will, and that by so doing she deprived herself proportionately of her right to look to the guaranty for an income of $12,000 per year. She did not have the right under the will directly to deliver to her relatives any of Mr. Burney's share of the community realty or the income therefrom, nor could she do indirectly what she could not do directly. We overrule the first point of error.

■ The trial court held that Mrs. Burney, before resorting to the guaranty, was obligated to use ordinary care, prudence and diligence in the investment and reinvestment of the corpus of her capital funds, to the end that no substantial or large amounts of money would remain uninvested. It was shown by the evidence that Mrs. Burney held as much as $30,000 in idle funds, which were uninvested and produced no income. In her second point appellant complains of this ruling. For the reasons suggested in discussing the first point, we think that the ruling of the trial court was correct. For Mrs. Burney to avoid the risk of investment in some prudent and diligent manner, and instead to invoke the guaranty provisions of the will, thus imposing upon Mr. Burney's share of the estate the risk of investment, was, we consider, inconsistent with the obligation of mutuality which under the will so clearly rested upon her. It was not the purpose of the will to protect her against giving away her property to her relatives, or against leaving inordinate amounts of her own funds uninvested with the result that risks of investment and trouble of management should fall upon Mr. Burney's share of the estate.

■ The trial court, in construing the will, declared that the executor-trustees, and their successors, had plenary power and the duty to determine whether any diminution in income resulting from sale of property by Mrs. Burney should be taken into account in determining the net income contemplated by the guaranty provisions, and likewise to determine whether she had exercised diligence in investing

her funds, and that the action of the executor-trustees in such respects should not be revised, questioned or reversed except upon a showing that they had exercised their power in an arbitrary or capricious manner. Appellant complains of this ruling under her third point.

We think that the executor-trustees have the duty and authority of determining whether Mrs. Burney has a claim under the guaranty, and of paying her such sums as they may find to be due her, or declining to pay her anything if they do not consider that anything is owing; but we think that the judgment goes too far in providing that their action in making such determination shall not be revised, questioned or reversed except upon a showing that they have acted in an arbitrary or capricious manner. Any claim she may have at any time on the guaranty will not be based upon the good faith of the executor-trustees in passing upon her claim, but upon the facts of the case, whatever they may be. If she claims that her income has fallen below the $12,000 figure, it will be for the court to decide whether her income has fallen below such figure, or whether there has been a decline in the purchasing power of the dollar, or whether she has deprived herself of the right to look to the guaranty by disposing of her property or failing to use diligence in the investment of her funds to the end that they will produce income. The case will not turn on the question of whether the executor-trustees have been capricious or arbitrary in determining Mrs. Burney's rights. We reform the judgment accordingly.

■ The fourth point is so general in its terms that there is some doubt about what is complained of in it. From the argument made under it, and the argument made under the fifth point, it seems that the chief complaint concerns an item of $7,265.41 paid in the year 1942 for income taxes covering income for the years 1940 and 1941. Appellant argues that the amount paid in 1942, on taxes against the 1940 and 1941 income, should be deducted from the amount of income received during 1942, in determining whether Mrs. Burney had a net income of $12,000 during 1942. Her income for 1942 was more than $12,000 if the above item of income taxes is not to be deducted in determining the net income for 1942.

It seems clear to us that the income taxes for 1940 and 1941 were chargeable against those years, and that the only income tax that could be charged against the 1942 income would be the income tax for that year. Appellant presents a complicated argument as to whether the net income for a particular year is to be figured on an accrual or a cash basis, but we think that the practical interpretation of the will is to declare that, in determining whether Mrs. Burney has received a net income of $12,000 in a particular year, there should be charged against the gross income the income tax for that year. Again our duty is to search for the intention of the testator, rather than to undertake to determine technical rules of accounting practice. The will provides that net income means the "annual income after all property expenses reasonably necessary or expense incident to income are paid, as for instance all taxes of every kind (including ad-valorem taxes, income taxes, and other taxes) * * *." It is not reasonable to suppose that the testator intended that Mrs. Burney should have the right to alter her net income, for purposes of looking to the guaranty, by deferring payment of an obligation chargeable against a particular year. We overrule the fourth and fifth points.

Point six relates to the same matter, and is overruled.

■ In 1943 Mrs. Burney and Mr. Burney's relatives made an agreed partition of certain property. In the written agreement effecting such partition it was provided that each party should pay his own attorneys' fees, and that the expenses of the partition should be borne one-half by appellant and one-half by Mr. Burney's estate. Mrs. Burney now claims that her fees and expenses so incurred should be charged against her income for 1943, in determining whether she has a claim against the guaranty for that year. We cannot see the merit of this contention. Whatever rights the parties had were merged into the written agreement, and it is to be presumed that each of the parties agreed to the terms of the partition agreement in the light of the provision of the agreement relating to payment of the expenses. To uphold Mrs. Burney's contention would be to allow her, as a practical matter, to evade the agreement she made in writing to pay her attorneys'

fees and half the expenses of the partition, and to impose such expenses and fees upon the appellees. Points seven and eight, raising this question, are overruled.

■ One-half the court costs were assessed against appellant, and one-half against the trustees of the estate. In her ninth point appellant complains of the assessment of half the costs against her. In view of the judgment rendered, we see no error in this respect.

■ The court decreed that half the attorneys' fees, and the court costs incurred by appellant in prosecuting this suit, were proper expenses to be considered in determining net income with reference to the guaranty provisions of the will. Appellant says that she should have been allowed to charge all of such items, and not half only, against her gross income. Appellees, under their first counter-point of error, argue that none of the attorneys' fees nor court costs incurred by appellant in the present suit should be considered in determining her net income. They say that such expenses were not incurred in the production of her income, or as expenses pertaining to her property, but were simply expenses incurred in an effort to assert a claim against the estate. We believe that the provisions of the will are broad enough to include expenses of the nature here considered among those which are to be deducted in computing Mrs. Burney's net income. We are not able to perceive any theory upon which half of such expenses either should or should not be deducted. It seems to us that either all or none of such expenses are allowable. It will be our judgment that the decree of the trial court be reformed so as to allow all of the attorneys' fees and all of the costs assessed against appellant as a proper deduction from the gross income.

■ As mentioned above, Mr. Burney had during his lifetime placed certain properties in the hands of Henry P. Burney as trustee, and in his will declared that such property was the separate property of Mrs. Burney. After Mr. Burney's death the Federal Government assessed a deficiency tax levy against the deceased's estate on the theory that the trust property was community property of Mr. and Mrs. Burney, and therefore subject to an estate tax. The estate brought suit against the Commissioner of Internal Revenue for the purpose of contesting the tax levy. On March 20, 1943, a written contract was entered into between appellant and the estate relating to this matter, and in such agreement it was provided that each of the parties should bear one-half the costs and attorneys' fees of such suit. The trial court in the present case held that appellant was not entitled to deduct her share of the costs and attorneys' fees incurred in the tax suit from gross income in determining whether she had a claim on the guaranty. We think that the trial court was correct in so holding. It is like the situation involved in the partition agreement between appellant and Mr. Burney's relatives, discussed above. To uphold Mrs. Burney's contention would be to allow her to escape the consequences of the written agreement she made with reference to the handling of the tax suit.

The proof shows that after Mr. Burney's death Mrs. Burney and the other trustees sold a tract of land in Gaines County, Texas. The court in his findings of fact and conclusions of law finds that Mrs. Burney suffered a loss of income of $109.84 per year during 1942 and 1943 by reason of this sale, on the theory that the net income from such land in 1941 was $109.84. He concludes that such amount should therefore be added to her actual net income for those years in determining whether she had a claim against the guaranty. Appellant contends under her twelfth point, and correctly, that there is no proof in the record as to the net income from said land in 1941. She also contends that in no event should she be charged with more than half of such lost income. While the court's findings and conclusions are erroneous, they are immaterial, since Mrs. Burney has no claim under the guaranty for 1942 and 1943 whether the Gaines County land transaction is taken into consideration or not.

After Mr. Burney's death all of the beneficiaries of the will and the trustees, except Mrs. Burney and Henry P. Burney, entered into a written contract providing for the amount of fees to be paid to the executor-trustees. The trial court held that the agreement was valid, but that Mrs. Burney was not bound by it. Mrs. Burney complains of the ruling under her thirteenth and last point of error, but we have been unable to see that any right of

hers is prejudiced by the ruling. We therefore overrule the point.

 Appellees complain under the second counter-point of error of the ruling of the trial court that reasonable repair and upkeep costs on Mrs. Burney's homestead should be deducted in computing her net income. Under the third counter-point appellees complain of the ruling that taxes against the homestead were also deductible in computing the net income. Appellees argue that repairs and upkeep, and taxes, on the homestead constituted a part of Mrs. Burney's living expenses, and that the will contemplates that Mrs. Burney should pay them out of her net income of $12,000. Appellant argues that the items in question are among those mentioned in the definition of net income contained in the will, which reads in part as follows: "By 'Net Annual Income' * * * I mean the remaining annual income after all property expenses reasonably necessary or expenses incident to such income are paid, as for instance all taxes * * *, all cost of reasonable insurance on the assets, all reasonable repair and upkeep cost on improvements, to keep same in good tenantable condition, and all necessary or reasonable salary or wage charges, and the like."

It seems to us that appellee's points are well taken. From the language quoted it appears that the deductible charges are those that are encountered in the production of income, and do not include charges that are simply a part of Mrs. Burney's living expenses.

Under their fourth counter-point appellees complain of the ruling of the trial court allowing as a deduction in computing net income the cost of insurance on the homestead and on certain of her personal property such as furs, jewelry and other personal belongings. For the reasons immediately above stated, we think that this ruling was erroneous. The judgment will be reformed accordingly.

The judgment of the trial court is therefore reformed in the following particulars:

Paragraph 4(d) of the judgment is reformed by eliminating therefrom the provision which reads as follows: "The action of the Executor-Trustees and the Successor-Trustees in making such determination is an exercise of plenary power conveyed under the will, and may not be revised, questioned or reversed, except upon a showing that they have exercised such power in an arbitrary and capricious manner."

Paragraph 5 of the judgment is reformed so as to eliminate therefrom the clause at the end of such paragraph which reads as follows: "* * * but the court will not interfere with the determination of the Executor-Trustees and successor Trustee, unless it is shown that they have acted in an arbitrary and capricious manner."

Paragraph 6(b) (3) of the judgment is reformed so as to read as follows:

"Reasonable repair and upkeep costs (including the cost of replacing worn out, injured or destroyed parts not subject to repair) of improvements on her property, (not including costs of additions), with the exception of plaintiff's homestead now located at 1509 Sunset Terrace, Fort Worth, Texas.

"The cost of replacements shall be charged in one year or prorated according to sound accounting principles."

Paragraph 6 (b) (4) of the judgment is reformed so as to read as follows: "Taxes on plaintiff's property, both real and personal, improved and unimproved, income bearing or non-income bearing, with the exception of plaintiff's homestead and property therein now located at 1509 Sunset Terrace, Forth Worth, Texas; and"

Paragraph 6 (b) (5) of the judgment is reformed so as to read as follows: "Cost of insurance on plaintiff's property, both real and personal, excepting insurance on plaintiff's said home, and excepting plaintiff's jewelry, clothing and household furnishings. The cost of insurance extending beyond the term of one year shall be prorated according to sound accounting principles."

Paragraph 9 of the judgment is reformed so as to read as follows: "The reasonable attorneys' fees and court costs incurred by plaintiff in prosecuting this suit are proper expenses to be deducted from plaintiff's gross income in determining what, if anything, is due her under the guaranty provisions of the will."

As so reformed, the judgment of the trial court is affirmed.

Costs of the appeal are assessed one-half against appellees and one-half against appellant.