Faye B. GRESHAM et vir, Appellants,

v.

Fred TURNER, Jr., et al., Appellees.

No. 5582.

Court of Civil Appeals of Texas.

El Paso.

Oct. 23, 1963.

Wynne, McKenzie, Stroud, Jaffe & Tinsley, Jerome Chamberlain, Dallas, for appellants.

Stubbeman, McRae, Sealy & Laughlin, Tom Sealy, Walter K. Boyd, Jr., F. H. Pannill, Horace N. Burton, Midland, Graves, Dougherty, Gee & Hearon, Ireland Graves, Robert J. Hearon, Jr., Austin, for appellees.

PRESLAR, Justice.

This is an action for the construction of an oil and gas lease executed by appellants, as lessors, to appellee Fred Turner, Jr., as lessee, and dated February 27, 1947. The remaining appellees are assignees and co-owners of the lessee's interest. The sole question for determination is the amount of royalty reserved in such lease by appellants. Appellants were owners of an undivided 1/80th mineral interest in Section 14, Block 41/2, G.C. & S.F. Ry. Co. Survey, containing 922 acres, Upton County, Texas, when they executed the lease in question on a printed form in common use, which provided, among other things, as follows:

"1. Lessor in consideration of Ten Dollars ($10.00) in hand paid, of the royalties herein provided and of the agreements of Lessee herein contained, hereby grants, leases and lets exclusively unto Lessee * * *, the following described land in Upton County, Texas, to-wit:

"Survey No. 14, Block 41/2, G.C. & S.F. Ry. Co. Survey and containing 922 acres more or less * *. *

"3. The Royalties to be paid Lessor are: (a) on oil, one eighth of that produced and saved from said land * *."

The printed lease form also contained the following proportionate reduction clause:

" * * * without impairment of Lessee's right under the warranty in event of failure of title, it is agreed that if Lessor owns an interest in said land less than the entire fee simple estate, then the royalties and rentals to be paid Lessor shall be reduced proportionately."

Prior to trial it was stipulated between the parties that the proportionate reduction clause was deleted prior to execution of the lease. It was also stipulated that the lessor owned only a ⅟₈₀th mineral interest in the 922-acre Section 14, that the bonus consideration for the lease was $10.00 per acre on 11.52 acres, and that payment for delay rentals was agreed by the parties to be $1.00 per acre on 11.52 acres at the time of the execution and delivery of the lease. It was also stipulated that production of oil under the lease began during its primary term and has been continuous, but that lessors have not executed any division orders or accepted any of the tendered royalty payments, and that the lessees have not brought any action to reform the lease, nor sought to vary or attach the validity of same, but have always contended that appellants were entitled to royalty of their ⅟₈₀th part of the ⅛th royalty only.

Trial was before the court without a jury, with the plaintiffs (lessors) contending the lease was not ambiguous and that they were entitled to a royalty of ⅛th of the total production, ⅛th of ⅞th, from Section 14. Defendant lessees contended the lease was not ambiguous, but that it provided for lessors to receive only a royalty of ⅛th of their ⅟₈₀th interest, and alternatively, that the lease contained a latent ambiguity, was a product of mutual mistake, or it was a case of constructive fraud. The four-year statute limitations was also relied on by defendant lessees. The trial court entered judgment that lessors were entitled only to ⅟₈₀th of the ⅛th royalty. No findings of fact or conclusions of law are in the record, so that the basis for the judgment is not known.

■ We are of the opinion that the judgment is correct and that the instrument is unambiguous. We arrive at that conclusion by finding the intention of the parties thereto from within the four corners of the instrument, the language used by the parties, the subject matter of the instrument, aided by the situation of the parties and the surrounding circumstances. That, we perceive to be the correct rule of construction of an unambiguous instrument. Texas Gas Corp. v. Hankamer, Tex. Civ.App., 326 S.W.2d 944; Ryan v. Kent (Tex.Com.App.), 36 S.W.2d 1007; Lipscomb v. Fuqua, 103 Tex. 585, 131 S.W. 1061; Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004; Gibson v. Turner, 156 Tex. 289, 294 S.W.2d 781 (1956).

We are aided in the determination of this case by the fact that the Supreme Court of this State has previously decided a case (Gibson v. Turner, supra) involving the same land, the issue as to the amount of royalty to be paid under an exact lease form (except for an oil payment), but involving different parties plaintiff and a different fraction of mineral interest owned.

■ We turn now to the precise question of what royalty the parties intended. Looking to the language of the lease we note first that the royalty is "reserved". That can mean only that it is something retained out of that which was granted. What was granted? A lease of a ⅟₈₀th mineral interest. Then the ⅛th royalty reserved must come out of the ⅟₈₀th. The effect of the ordinary oil and gas lease, of which this is one, is to vest the lessee with a determinable fee to the minerals in place. Waggoner Estate v. Sigler Oil Company, 118 Tex. 509, 19 S.W.2d 27. Royalty is the specified portion of those minerals intended to remain and vest in the lessor. Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, 80 S.W.2d 741. To follow the construction urged by appellants herein would be to hold that one could become vested with a ⅟₁₀₈₀th interest, ⅛th of ⅞ths, by conveying a ⅟₈₀th and making a reservation of ⅛th. The use of the word "from" can have no other meaning than that given "reserved". "The royalties to be paid Lessor are: (a) on oil, one-eighth of that produced and saved from the land * * *." Saved from what land? The only reasonable construction is that with which the parties are dealing—the ⅟₈₀th mineral in-

terest which was the subject of their contract. Lessor owned a $\frac{1}{80}$th interest which he was interested in leasing, and lessee was interested in leasing said $\frac{1}{80}$th; they made a deal and drew the lease in question to cover the subject of their deal—the $\frac{1}{80}$th. Out of *that* $\frac{1}{80}$th, lessor reserved a $\frac{1}{8}$th royalty. Another factor reflecting the intentions of the parties is that the construction which we here give to their lease would comport with ordinary business dealings, while that urged by appellants would not. We do not think it reasonable that one would make a business deal agreeing to give up $\frac{19}{80}$th of the oil above ground for $\frac{1}{80}$th of the same oil below the ground. The situation of the parties was such that lessee could have drilled without the lease covering lessors' fractional interest, and would have been obligated to pay lessors only $\frac{1}{80}$th of the production. That, after deducting $\frac{1}{80}$th of the drilling and equipping cost from lessors' share. Burnham v. Hardy Oil Co., Tex.Civ.App., 147 S.W. 330, affirmed 108 Tex. 555, 195 S.W. 1139. In such a situation we do not believe the parties intended a trade whereby one would receive $\frac{19}{80}$th for his $\frac{1}{80}$th, plus a cash consideration and relief from the cost of drilling and equipping.

Appellants urge that this case is controlled by the case of Gibson v. Turner, supra. With that we do not agree. The Supreme Court, in construing the lease in that case, was dealing with a different fractional ownership from that in our case. There, the subject matter of the lease was a $\frac{3}{40}$th mineral interest, and by the court's construction the lessors had a royalty of $\frac{5}{40}$th. The court held, as do we, that the $\frac{5}{40}$th was "reserved" out of the $\frac{3}{40}$th, and it recognized that while the usual royalty was $\frac{1}{8}$th, the parties could agree on a different royalty. The court then makes the point, in support of its opinion, that it was possible to reserve the $\frac{5}{40}$th out of $\frac{3}{40}$th and that such could be done *without any incongruity*. Appellees urge that by such language the Supreme Court clearly intended to limit its holding to instruments in which the claimed royalty could possibly be reserved out of the interest leased. We do not speculate as to whether the Supreme Court intended such a rule, but simply point out that it makes the Gibson case an entirely different case from the one before us. Such language prevents the Gibson case from being controlling in our case, for in the instant case it would not only be an incongruity, but an impossibility, to reserve $\frac{19}{80}$th out of $\frac{1}{80}$th.

The trial court filed no findings of fact or conclusions of law, so that there is nothing in the record to indicate that the basis for the trial court's judgment is any different from ours. That fact, plus the construction we put on the instrument in question, makes it unnecessary to further consider the appellants' points of error, and all are overruled.

The judgment of the trial court is affirmed.