Geotrac Energy corp., et al v. Gottschalk, et al 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00538-CV






 Geotrac Energy Corporation, et al., Appellants


v.



 Edward Gottschalk and wife, Dorothy Gottschalk, and Edwin W. Deike


D/B/A EWD Oil, Appellees







FROM THE DISTRICT COURT OF RUNNELS COUNTY, 119TH JUDICIAL DISTRICT


 NO. 12,080, HONORABLE JOHN E. SUTTON, JUDGE PRESIDING






 Appellants, (1) who were defendants and cross-plaintiffs below, appeal from a summary
judgment granted in favor of appellees Edward and Dorothy Gottschalk and Edwin W. Deike. Appellants
assert that the trial court erred in holding, as a matter of law, that appellants' oil, gas, and mineral lease
partially terminated pursuant to a clause mandating that appellants have two producing wells in order to
hold the entire lease acreage. Appellants also contend that, because they satisfied the conditions in the
lease by maintaining one producing oil well, the trial court erred in not granting appellants' motion for
summary judgment. We will affirm the summary judgment in favor of appellees. 




BACKGROUND


 Appellees Edward and Dorothy Gottschalk own an undivided one-half interest in the oil,
gas, and minerals in 162.75 acres of land in Runnels County, Texas. In March 1988, the Gottschalks, as
lessors, executed an oil, gas, and mineral lease to Geotrac, as lessee, who in turn assigned part of the lease
to the other appellants. 

 The original lease contained a habendum clause that stated that the primary term of the
lease was for two years. As amended, the habendum clause extended the primary term for an additional
year; it was printed on a "Producers 88 Revised" standard form that stated "[s]ubject to the other
provisions herein contained, this lease shall be for a term of 3 years from this date (called "primary term")
and as long thereafter as oil, gas, or other mineral is produced from said land hereunder." It is worth noting
that this amendment stated that it was "expressly subject to all other terms and provisions of said lease as
originally executed and delivered." In an "Addendum" to the printed lease form, the parties agreed to the
following special provisions:



Notwithstanding anything to the contrary in the foregoing printed oil, gas, and mineral lease,
it is agreed and understood as follows, to-wit: 


12. Provided this lease is held by production at the expiration of the primary term, Lessee
will have one (1) year after the expiration of the primary term to drill an additional well, and
if no such well is drilled, then this lease will expire except to forty (40) acres around each
producing oil well and eighty (80) around each gas well. Two producing wells will hold
the entire leasehold described herein.



This dispute centers around the parties' differing interpretations of Paragraph 12.

 During the primary term of the lease, Geotrac drilled two oil wells; the first was a producing
oil well, and the second was completed as a dry hole. After the primary term expired, Geotrac drilled a
third well which was completed as a dry hole on December 18, 1991.

 Because the primary term expired and Geotrac had only one producing well, appellees
concluded that, under Paragraph 12, the lease had expired. Accordingly, in May 1993, the Gottschalks
executed an oil, gas, and mineral lease covering one-half of the disputed acreage to appellee Edwin W.
Deike. The Gottschalks and Deike requested that Geotrac execute a release of the acreage. Geotrac
refused, claiming that the one producing well perpetuated the lease on the entire acreage. Appellees argued
that the lease expired except to the forty acres around Geotrac's one producing well and that Geotrac's
refusal to release the acreage clouded appellees' titles in the oil, gas, and mineral estate in the acreage.



DISCUSSION AND HOLDINGS


 Appellants argue in their first three points of error that the trial court erred in granting
summary judgment in favor of appellees based on its reading of Paragraph 12 as a mandate that appellants
maintain two producing wells in order to hold the entire lease acreage beyond the primary term. These
points of error essentially raise questions of contract construction. Although neither party argues that the
lease is ambiguous, both have differing interpretations of the document.

 With regard to the construction of oil and gas leases, the Court must search for the intent
of the parties when called on to interpret an instrument. McMahon v. Christmann, 303 S.W.2d 341, 344
(Tex. 1957). In resolving a question of construction in an oil and gas lease, the McMahon court explained:



In interpreting the lease it is the duty of the court to seek the intention of the parties. The
intention of the parties, as that intention is expressed in the lease, is to be ascertained by
a consideration of all provisions of the lease . . . and by harmonizing, if possible, those
provisions which appear to be in conflict.



Id. (citations omitted). Further, where neither party has alleged ambiguity in a document, the reviewing
court should read only the provisions of the lease itself to interpret a disputed clause. Gibson v. Turner,
294 S.W.2d 781, 783 (Tex. 1956). In Gibson, the court stated:



All parties agree that the lease is unambiguous . . . therefore, it is a question of the
construction to be given to the lease. It must be given the legal effect resulting from a
construction of the language contained within the four corners of the instrument.



Id. (citation omitted).

 Appellants argue that the last sentence of Paragraph 12, "[t]wo producing wells will hold
the entire leasehold described herein," merely specifies that two is the maximum number of producing wells
that appellants would be required to drill on the lease. If this had been the intent of the parties, however,
there would be no reason to include the last sentence of Paragraph 12, because the entire lease would have
been held under the habendum clause, which stated that the lease would be in effect as long as any oil, gas,
or minerals were being produced. Had there been no addendum to the Geotrac lease, the sole and only
producing well on the land covered by the lease would hold the entire acreage for as long as the well was
producing in paying quantities. Proper rules of interpretation require that we consider all the provisions of
the lease, however, and as it was executed and delivered, the addendum Paragraph 12 clearly mandates
that appellants drill two producing wells in order to secure and maintain the entire leased acreage. To
construe the lease otherwise would render either the habendum clause or the last sentence in Paragraph
12 in the addendum meaningless, which is not a reasonable construction. See Lab Oil Co. v. Bentz, 380
S.W.2d 846, 848 (Tex. Civ. App.--Corpus Christi 1964, no writ) (court must examine and consider entire
writing, seeking if possible to harmonize and give effect to all lease provisions so that none will be rendered
meaningless).

 Appellants nevertheless claim that this Court should not construe this clause as a forfeiture
provision. They point out that under laws of construction, courts are reluctant to enforce forfeiture
provisions in contracts where the "meaning is uncertain and obscure." Decker v. Kerlicks, 216 S.W. 385,
386 (Tex. 1919). Taken in context within the four corners of the lease, however, we do not consider the
language in Paragraph 12 to be "uncertain and obscure." When one reads the entire paragraph, the
language clearly and unequivocally states that two wells must be in production to hold all the acreage. 
Thus, without at least two producing wells, the lease automatically terminates except as to forty acres
around the one producing well.

 Appellants contend that if Paragraph 12 does impose an obligation to maintain two
producing wells, the obligation is implied, not explicit; the breach of an implied covenant would subject
appellants to liability in damages and not the partial termination of the lease. See Rogers v. Ricane Enter.,
Inc., 772 S.W.2d 776, 779 (Tex. 1989), Rogers v. Ricane Enter., Inc., 884 S.W.2d 763, 767 (Tex.
1994) (Rogers II). We reject this contention because the language of Paragraph 12 explicitly requires
two producing wells. Furthermore, a leading treatise states:



[T]he court should not read into the lease implied covenants unless this be necessary in
order to effectuate the intentions of the parties as disclosed by their agreement as a whole
. . . . It is not enough to say that an implied covenant is necessary in order to make the
lease fair, or that without such a covenant it would be improvident or unwise, or that the
lease would operate unjustly.



Tex. Jur. 3d Oil and Gas § 181 (1987). Because the language of Paragraph 12 makes the parties'
intentions clear, we decline to read it as an implied covenant. For these reasons, we overrule appellants'
points of error one, two, and three.

 In their fourth and fifth points of error, appellants assert that the trial court erred in failing
to grant their motion for summary judgment based on the notion that appellants satisfied all conditions
expressed in the lease necessary for the entire lease acreage to be held. Appellants also argue that the trial
court should have granted summary judgment in their favor on the basis that no provision in the lease
expresses a condition which requires two wells to be in production to prevent partial termination of the
lease. Having overruled all of appellants' claims that the trial court erred in granting summary judgment in
favor of the appellees, we necessarily overrule appellants' fourth and fifth points of error.

 Finding no error, we affirm the trial court's judgment.



 

 Bea Ann Smith, Justice

Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: March 6, 1996

Do Not Publish

1. [1]  The names of the individual appellants are Geotrac Energy Corporation; John S. Carter; Wintergreen
Energy Corporation; Austin E. Haney; R. L. Hamm, Jr.; Frizzell Development Company; John E. Estes;
Cleve Cullers; Cockrell Production Company, Incorporated; Buzz Oil Company; Guy L. Mattingly, Jr.;
and Wiley W. Dugger.


 drill on the lease. If this had been the intent of the parties, however,
there would be no reason to include the last sentence of Paragraph 12, because the entire lease would have
been held under the habendum clause, which stated that the lease would be in effect as long as any oil, gas,
or minerals were being produced. Had there been no addendum to the Geotrac lease, the sole and only
producing well on the land covered by the lease would hold the entire acreage for as long as the well was
producing in paying quantities. Proper rules of interpretation require that we consider all the provisions of
the lease, however, and as it was executed and delivered, the addendum Paragraph 12 clearly mandates
that appellants drill two producing wells in order to secure and maintain the entire leased acreage. To
construe the lease otherwise would render either the habendum clause or the last sentence in Paragraph
12 in the addendum meaningless, which is not a reasonable construction. See Lab Oil Co. v. Bentz, 380
S.W.2d 846, 848 (Tex. Civ. App.--Corpus Christi 1964, no writ) (court must examine and consider entire
writing, seeking if possible to harmonize and give effect to all lease provisions so that none will be rendered
meaningless).

 Appellants nevertheless claim that this Court should not construe this clause as a forfeiture
provision. They point out that under laws of construction, courts are reluctant to enforce forfeiture
provisions in contracts where the "meaning is uncertain and obscure." Decker v. Kerlicks, 216 S.W. 385,
386 (Tex. 1919). Taken in context within the four corners of the lease, however, we do not consider the
language in Paragraph 12 to be "uncertain and obscure." When one reads the entire paragraph, the
language clearly and unequivocally states that two wells must be in production to hold all the acreage. 
Thus, without at least two producing wells, the lease automatically terminates except as to forty acres
around the one producing well.

 Appellants contend that if Paragraph 12 does impose an obligation