PAN AMERICAN PETROLEUM COR-
PORATION, Appellant,

v.

**Guy U. ROBINSON et al., Appellees.**

No. 4094.

Court of Civil Appeals of Texas.

Eastland.

July 29, 1966.

Rehearing Denied Aug. 26, 1966.

James K. Smith and Harry O. Hickman, Ft. Worth, for appellant.

Alexander & Martin, Ft. Worth, John P. Ritchie, Mineral Wells, Brooks, Tarlton, Wilson & Gilbert, Ft. Worth, for appellees.

WALTER, Justice.

Guy U. Robinson and others, hereinafter referred to as Robinson, recovered a judgment against Pan American Petroleum Corporation for $6,123.37 for minimum royalties under an oil and gas lease. The oil company has appealed.

Robinson executed an oil and gas lease to Pan American on July 31, 1958, for a primary term of five years on one-half interest in approximately 6,978.31 acres in Palo Pinto County. The oil company complied with the terms of the lease during the primary term. During the primary term two producing gas wells were completed on the property. Attached to the printed lease is a typewritten rider providing, among other things, the following:

"* * * After the expiration of the primary term of this lease, if the royalties paid under the provisions of Paragraph 3 hereof for any given year commencing on the 31st day of July and ending on the 30th day of July of the succeeding year do not amount to as much as $13,956.62 or $2.00 per acre for each net mineral acre then held hereunder, then the difference between the amount so paid and the said sum of $13,956.62 or $2.00 per acre for each net mineral acre then held hereunder shall be paid to Lessor so that Lessor shall receive not less than $2.00 per net mineral acre during each year after the primary term for each such acre so held by this lease. Shut-in payments under Paragraph 3, during the primary term or thereafter, shall always equal the minimum royalty hereinabove provided, and such amounts of minimum royalty or minimum shut-in payments shall be paid within ninety (90) days from the expiration of said given year. * * *"

A portion of paragraph 4 of the printed form is as follows:

"* * * Lessee may at any time execute and deliver to Lessor or to the depository above named or place of record a release or releases covering any portion or portions of the above described premises and thereby surrender this lease as to such portion or portions and be relieved of all obligations as to the acreage surrendered, *and thereafter the rentals and minimum royalties or shut-in-payments payable hereunder shall be reduced in the proportion that the acreage covered hereby is reduced by said release or releases.*" (Emphasis Ours.)

The first year following the primary term began on July 31, 1963. Pan American continued to exercise dominion and control over all the acreage until it recorded a partial release to all but 640 acres. This release was filed of record on July 29, 1964.

The record reveals that Raven Oil Company drilled a well under a farm out agreement with Pan American on some of the acreage that was released in May or June of 1964. Robinson testified that Raven "didn't get out until after the 1st of August." The record is clear, however, that the well was plugged and abandoned prior to July 30, 1964, but that the filling of the slush pit and repairing the roads and some clean up operations were performed after that date.

Pan American had paid minimum royalties for the last year of the primary term, namely 1962–1963. It contends that such payment, coupled with production, perpetuated the lease on all the acreage for the first year after the primary term, namely 1963–1964. It released all the acreage except 640 acres two days before the expiration of the first year after expiration of the primary term. Robinson owned a one-half interest in the 640 acres. Pan American contends that Robinson received more than $640.00 from production and was not due any money under the minimum royalty provision based on the entire acreage.

▄ Robinson contends he is entitled to recover minimum royalties based on the acreage held by the oil company during such first year after the primary term because the lease provides for such payment and the oil company is not relieved from paying such minimum royalties until after it has released the acreage. We agree with Robinson's contention and affirm the judgment.

▄ Neither party contends that the lease is ambiguous. In Gibson v. Turner, 156 Tex. 289, 294 S.W.2d 781 (1956) the court said:

"All parties agree that the lease is unambiguous, and we also agree that there is no ambiguity in the lease; therefore, it is a question of the construction to be given to the lease. It must be given the legal effect resulting from a construction of the language contained within the four corners of the instrument. * * *"

Under the quoted provisions of the lease, Pan American was obligated to pay the minimum royalties for the year 1963–1964. Paragraph four sets forth in clear and unambiguous language the agreement on this point. By the use of the word "thereafter" in that paragraph, it is shown the parties intended for the oil company to be relieved from paying minimum royalties on released acreage after it released it, but not before.

We have considered all of appellant's points and find no merit in them. They are overruled.

The judgment is affirmed.