## NATURAL GAS PIPELINE COMPANY OF AMERICA, Plaintiff,

v.

## Albert William ZIMMER, John P. Zimmer, C. Willienell Zimmer Haynes, Alfred W. Brown, Alice E. Brown Jordan, George A. Brown, Lillian F. Brown Simpson, Albert L. Brown, Burdette O. Brown, Robert S. Brown, Cecil L. Brown and James C. Brown, Defendants,

v.

## GULF OIL CORPORATION, Third-Party Defendant.

### Civ. A. No. CA-2-76-9.

United States District Court, N. D. Texas, Amarillo Division.

Oct. 31, 1977.

---

William H. Brian, Jr., Culton, Morgan, Britain & White, Howard F. Saunders, III, Amarillo, Tex., for plaintiff.

Harold W. Ochsner, Tabor Scott, Amarillo, Tex., Michael C. Smith, Charles C. Hairston, Edwin S. Hurst, Tulsa, Okl., for third-party defendant.

## MEMORANDUM OPINION

WOODWARD, District Judge.

The above case was tried before the court without a jury on the 20th day of September, 1977 in Amarillo, Texas and same was submitted to the court on the basis of oral argument, stipulated facts, and written briefs from all counsel. After hearing and considering the arguments, pleadings, and briefs of the parties the court files this memorandum opinion which shall constitute the court's findings of fact and conclusions of law.

On January 16, 1926 William H. Brown and wife, Mary F. Brown, as lessors, did execute an oil and gas lease in favor of Gulf Production Company covering 1,280 acres, more or less, in Moore County, Texas. The defendants in this case are successors in interest to all rights created in the original lessors by said lease and plaintiff, Natural Gas Pipeline Company of America, is the owner of all gas rights under the leasehold estate. Gulf Oil Corporation is owner of a portion of the oil rights under the lease, with plaintiff owning the remaining oil rights.

The first sentence of the habendum clause of the lease [1] in question provides for an original term of 12 years and the second sentence contains a proviso that the lease shall not remain in force longer than 50 years. Delay rentals are provided for in Section 1, Paragraph 3 of the lease to be paid commencing twelve months after the date of the lease and continuing semiannually for eighteen six-months' periods in the absence of drilling operations by lessee.

1. "Par. 2. TO HAVE AND TO HOLD unto said Lessee and to Lessee's successors and assigns for the term of Twelve (12) years from the date hereof and as much longer thereafter as oil or gas (or other minerals, if produced hereunder) are produced from said land. Provided, that this lease shall not remain in force longer than fifty (50) years from this date, and provided further, that a temporary cessation of production due to cleaning out, working over or drilling deeper of any well, or similar causes occurring after production secured, shall not terminate this lease. And Lessor covenants that Lessor has good title to said land and will protect Lessee in the quiet and peaceable possession thereof."

Section 1, Paragraph 6 provides that the lease would wholly terminate if operations were not begun on or before ten years from the date of the lease. However, if lessee had begun operations prior to the termination of the ten year period, and was engaged in such operations at the end of said period, then lessee had the right to continue such operations and to make additional attempts to find oil or gas beyond the ten year period, provided such attempts were successive in the sense that no more than 60 days could elapse between the abandonment of work on one well and the beginning of operations on another. In no event could lessee continue operations to find oil and gas beyond the original term of twelve years in the absence of production.

The practical effect of these clauses was to grant the lessee a 10-year primary term, provided semiannual delay rentals were paid in the absence of oil and gas production, and to give lessee the privilege of carrying out further drilling operations for an additional two-year period if no oil and gas had been discovered at the end of the 10-year term but drilling operations were underway at the end of that time. Production during these periods would keep the lease in force and effect "as much longer thereafter" as oil and gas were produced from the land under lease, limited, however, to a fixed term of fifty years.

On April 5, 1935, the Browns entered into a supplemental agreement with plaintiff's predecessors in interest under the lease, Texhoma Natural Gas Company, who had acquired the gas rights of the original lessee, Gulf Production Company. Section II, Paragraph 1 of this agreement provided that if a well had not been commenced on the tract under lease by January 15, 1936, the end of the 10-year primary term, lessee could pay on or before that date the sum of $1,280.00 and thereby extend its right to commence a well on said tract for an additional one year period. Paragraph 1 of Section II of the agreement also contained the following:

"  .   .   .  it being the intention of the first party (the lessors) by this instrument to grant an extension of one year in which a well may be commenced if the sum of $1,280.00 be paid not later than January 15th, 1936."

This supplemental agreement contains a total of twelve paragraphs each of which amend the lease in some respect; however, some of these amendments are entirely unrelated to the intention of the lessor quoted above, that being to grant lessee an extension of one year in which to commence a well; rather, this agreement also contains provisions pertaining to proration of acreage to production, offset wells, development and royalties, among others. It is one such provision, found in Paragraph 4, Section II of this agreement which gives rise to the present controversy.

In Paragraph 4, of Section II[2] of the supplemental instrument the parties agreed that one well would constitute adequate development of the entire 1,280 acres under lease insofar as the production of natural gas was concerned. That paragraph further provides that "said oil and gas lease shall remain in full force and effect as to all the land included within said 1,280 acres, so long as oil or gas is produced from any portion thereof."

The plaintiff in this case contends that by virtue of the above quoted portion of Paragraph 4, the oil and gas lease is to remain in full force and effect so long as oil or gas is produced from said land and that this amendment did in effect remove from the original lease the proviso and limitation that the lease would not remain in force longer than fifty years from its date. Gulf, the owner of a portion of the oil rights under the lease, agrees with this contention.

The defendants, land owners, take the position that Paragraph 4, of Section II of the supplemental agreement did not have

---

2. "4. One well shall constitute adequate development of said 1280 acres, in so far as the production of natural gas only is concerned, and said oil and gas lease shall remain in full force and effect as to all the land included within said 1280 acres, so long as oil or gas is produced from any portion thereof."

the legal effect of amending the habendum clause of the original lease, so as to remove the fifty year limitation contained therein.

Plaintiff seeks a declaratory judgment that the lease will remain in force and effect so long as oil and gas is produced from the tract under lease and the pretrial order in this case and the stipulations contained therein show that there is an actual controversy between the parties over these instruments that requires court determination under the Declaratory Judgment Act. *Maryland Casualty Company v. Pacific Coal & Oil Company*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

In oral argument of the case all parties took the position that neither the lease nor the amending agreement were ambiguous. Both plaintiff and defendants contend that the intent of the original parties to the lease is set forth clearly and unambiguously on the face of the instruments in question, and that such intent supports their respective positions. This court agrees that the intent of the parties is clearly expressed in the instruments under consideration and finds that only one reasonable interpretation can be attributed to the clauses in question; therefore, no ambiguity exists in the lease or in the supplemental agreement thereto. *Whelan v. Manziel*, 314 S.W.2d 126 (Tex.Civ.App.—Texarkana 1958, *writ ref. n. r. e.*).

When there is no ambiguity, only the question of the construction to be given the lease remains. *Pan American Petroleum Corporation v. Robinson*, 405 S.W.2d 698 (Tex.Civ.App.—Eastland 1966, *writ ref. n. r. e.*). This question of construction is properly a question of law for the court. *City of Pinehurst v. Spooner Addition Water Company*, 432 S.W.2d 515 (Tex.1968). In construing a lease it is the duty of the court to seek the intention of the parties by considering all the provisions of the lease and by harmonizing, if possible, those provisions which appear to be in conflict, using the applicable rules of construction. *McMahon v. Christmann*, 157 Tex. 403, 303 S.W.2d 341 (1957).

It is also a general rule of law in the case of unambiguous writings that the courts will give effect to the intention of the parties as expressed, or as is apparent in the writing, for it is the objective, not the subjective intent that controls. Therefore, when construing an unambiguous instrument it is not the real intent, but the intent expressed or apparent in the writing which is to be sought. *City of Pinehurst v. Spooner, supra.*

■ Turning to the case at hand, this court must determine by construing both instruments as a whole whether the parties' predecessors in interest under the lease expressed an intent in Section II, Paragraph 4 of the amending agreement,[3] to modify the habendum clause of the original lease so as to remove therefrom the 50-year limitation on the term of said lease. In making this determination the court must bear in mind that in Texas an oil and gas lease will be strictly construed against the lessee, *Stephenson et al. v. Stitz et ux.*, 255 S.W. 812 (Tex.Civ.App.—San Antonio 1923, *err. ref.*), *Leonard v. Caruthers*, 236 S.W. 189 (Tex. Civ.App.—Austin 1921), *modified*, 254 S.W. 779 (Tex.Com.App.—1923, judgmt adopted), and that if there is an irreconcilable conflict between the habendum clause of an instrument on one side and premises and recitals of that instrument on the other, the premises and recitals must yield. *Kokernot v. Caldwell*, 231 S.W.2d 528 (Tex.Civ.App.— Dallas 1950, *writ ref.*).

The court is aided somewhat in its inquiry by two decisions from the Texas courts interpreting the same lease form that is now under consideration. *Gulf Oil Corporation et al. v. Southland Royalty Company et al.*, 478 S.W.2d 583 (Tex.Civ. App.—El Paso 1972), *affirmed*, 496 S.W.2d 547 (Tex.1973). The *Southland* case involved an apparent conflict between the habendum clause of the lease with its 50-year limitation and a subsequent clause in the lease which provided in substance that when operations were delayed or interrupted due to forces beyond the control of the

---

**3.** *See* footnote 2, *supra*.

lessee, such delay would not be counted against the lessee—anything in the lease to the contrary notwithstanding. The Railroad Commission of Texas, exercising its authority to control production of oil and gas within the state, prorated the production allowables of lessees' wells thereby decreasing daily production from said wells. Lessees contended that because their operations had been delayed by forces beyond their control, that is the Railroad Commission orders, the lease was extended beyond the fixed 50-year term, by the number of production days lost as a result of those orders.

Both the Court of Civil Appeals and the Supreme Court held that the subsequent clause in the *Southland* lease did not in any way alter, change or amend the fixed 50-year term found in the habendum clause of that lease. The Court of Civil Appeals was of the opinion that the greater weight of authority in construing oil and gas leases ascribes to the habendum or term clause, the dominant role in determining the length term of the lease, unless it is properly modified by other provisions. 478 S.W.2d 583 at 587. Finding that the parties to the *Southland* lease contemplated a definite and fixed term, the Court of Civil Appeals concluded that the subsequent clause did not properly modify the habendum clause. The Supreme Court of Texas, in construing the *Southland* lease said as follows: "In looking to the place in this lease where we would expect to find the term stated, we find this very certain language: 'Provided that this lease shall not remain in force longer than fifty (50) years from this date . . . .'" With a plain and certain answer to the question of when the lease terminates, we cannot change that answer with words elsewhere in the lease not certainly directed to the same question. (Citations omitted.) 496 S.W.2d 547 at 552. Thus, both the Supreme Court and the Court of Civil Appeals held that the *Southland* lease terminated by its own 50-year limitation.

The *Southland* cases are, of course, factually distinguishable from the case at hand, in that, the *Southland* cases were concerned with a subsequent clause in the same lease, whereas in the case now before it, this court must determine whether a clause contained in a supplemental agreement properly modifies the habendum clause of the original lease. However, the *Southland* cases are controlling on the guidelines to be used by a court in determining the question presented here. Among other things the Supreme Court of Texas in those cases reaffirmed the principle that in construing oil and gas leases the habendum clause traditionally controls unless properly modified by other provisions, and the fixed term therein stated is not to be extended by words found elsewhere in the lease not certainly directed to the modification of the habendum clause. *Gulf Oil Corporation et al. v. Southland Royalty Company*, 496 S.W.2d 547, at 552 (Tex.1973).

▮ Applying this principle, the court is of the opinion that Section II, Paragraph 4 of the supplemental agreement was not intended to, nor did it, amend the habendum clause of the original lease, so as to remove the 50-year limitation and to substitute therefor a provision that the lease would continue in force and effect so long as oil and gas were produced from the land under lease.

Section II, Paragraph 4 of the 1935 agreement deals with the development of the tract under lease. It provides that one well will constitute adequate development of the tract, insofar as natural gas is concerned and concludes, "and said oil and gas lease shall remain in full force and effect . . . so long as oil or gas is produced from any portion thereof." It should be noted that the phrase "so long as oil or gas is produced from any portion thereof" is not a new term added to the original parties' agreement by the 1935 amendment. Similar language is found in the first sentence of the habendum clause of the original lease wherein the grant of the leasehold estate is for a term of twelve years "and as much longer thereafter as oil or gas . . . are produced from said land." This language is followed by the second sentence of the habendum clause which provides that

the lease shall not remain in force longer than 50 years from its date. Thus, as used in the habendum clause of the original lease, the "as much longer thereafter" clause can only mean that if at the termination of the original twelve year grant, oil or gas was being produced, the lease would remain in effect so long as production continued, provided however, that in no event would the lease term be longer than 50 years. Plaintiff does not, and indeed could not, contend that the 50 year fixed term was extended by the "as much longer thereafter" language found in the original lease, but now urges that similar language found in a development provision of a subsequent agreement between the original parties, evidences an intent by those parties to do away with the second sentence of the habendum clause which provides for a 50-year fixed term leasehold estate. This court does not agree.

Not in Section II, Paragraph 4 of the 1935 agreement, nor elsewhere in that instrument, is any mention made of the second sentence of the habendum clause, or of the fact that the 50-year fixed term was to be modified in any way. It is this court's opinion that Section II, Paragraph 4 of the supplemental agreement expressed an intention on the part of the parties to amend the original lease solely to the extent that only one well would be required to constitute adequate development of the tract insofar as natural gas was concerned. The language "and said oil and gas lease shall remain in full force and effect . . . so long as oil or gas is produced . . . " was added to this development clause solely to insure that if one well, which would constitute adequate development, was producing at the end of the extended exploration term created by the supplemental agreement, such well would keep the lease in full force and effect so long as gas was produced therefrom, or if further development resulted from the extended exploration period, so long as oil or gas was produced from any portion of the tract. Such an intention coincides with the intent expressed by the parties in the first sentence of the habendum clause of the lease wherein the parties used "and as much longer thereafter" to insure the continuance of the leasehold estate past the twelve year original grant, if oil or gas was being produced. The parties intended, in both the original lease and the supplemental agreement, for the lease to remain in full force and effect beyond the 12-year original grant so long as oil or gas was being produced, but they also intended for the lease to have an absolute fixed term of 50 years as evidenced by the inclusion of the second sentence in the habendum clause. This second sentence of the habendum clause is not modified in any way, not deleted from the original lease, nor is any inference made anywhere to it in the supplemental agreement.

The only reasonable intention that can be attributed to the parties, by construing the two instruments as a whole, is that nothing was contained in the 1935 agreement to change the 50-year fixed term of the original lease and no such intention can be inferred from any of the amendments that were made by that agreement.

This construction harmonizes two seemingly conflicting provisions of the original parties' agreement and is fully supported by the stated intention of the lessor found in Section II, Paragraph 1 of the supplemental agreement, wherein the first party's expressed intention by entering into said agreement was to create an extension of one year in which a well could be commenced. Admittedly, this expressed intention on the part of the original lessor is not consistent with many other amendments of the leasehold effected by the 1935 agreement, but certainly with the expressed intention and with the fact that no new language is introduced by said agreement concerning the 50-year fixed term, it would be an unreasonable stretching of the language used, to give the amendment any interpretation that would modify the 50-year term. This is especially so, in light of the Texas Supreme Court's mandate that clear language establishing a fixed term leasehold found within a habendum clause of a lease is not to be changed by words found elsewhere in the lease not certainly directed to

72

the same question. *Gulf Oil Corporation v. Southland Royalty Company*, 496 S.W.2d 547, at 552 (Tex.1973). Such reasoning is clearly applicable to the lease amendment before the court. Therefore, the attorneys for the defendants will prepare and submit to the court a judgment finding and declaring that the lease terminated at the end of its 50-year term, January 16, 1976.

The judgment will be entered accordingly.