**J.O. CLARK, Jr., Appellant,**

v.

**Elva Salinas PEREZ and Miguel Perez, Appellees.**

**No. 04–83–00248–CV.**

Court of Appeals of Texas, San Antonio.

Oct. 17, 1984.

Kenneth T. Fibich, Jacalyn P. Scott, Bonham, Carrington & Fox, Houston, for appellant.

Glenn H. Raney, Rio Grande City, for appellees.

Before BUTTS, REEVES and TIJERINA, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a summary judgment in an oil and gas case. Plaintiffs, Elva and Miguel Perez, and defendant, J.O. Clark, Jr., filed motions for summary judgment. The trial court granted the plaintiffs' motion, denied the defendant's, and defendant appeals. We affirm in part and reverse and render in part.

On March 13, 1964, the Perezes entered into an oil, gas, and mineral lease with J.O.

Clark, Jr. [and Aaron Clark], covering some 331.3 acres in Starr County. On January 19, 1966, plaintiffs entered into an identical lease with Pioneer Corporation, covering 721 acres in Starr County. On December 6, 1968, plaintiffs and lessees Pioneer Corporation [and Nicklos Oil & Gas Company] (J.O. Clark, Jr. signed for Pioneer Corporation) entered into a lease amendment to merge and amend the 1964 and 1966 leases. The effect of the 1968 amendment on the 1964 and 1966 leases is the root issue. Only Clark appeals.

■ In paragraph I(c), the 1968 lease amendment merges the 1964 and 1966 leases. The 1964 and 1966 leases have identical terms. The habendum clause of each creates a fee simple determinable in the lessee:

Subject to the other provisions herein contained, this lease shall be for a term of five years from the date (called 'primary term') and as long thereafter as oil, gas or other minerals produced from said land or land which said land is pooled hereunder.

It is well settled Texas law that this provision constitutes a special limitation upon the estate transferred; after the expiration of the primary five year term, the lease shall continue in effect only as long as oil or gas is produced. *Lynch v. Southern Coast Drilling Co.*, 442 S.W.2d 804, 806 (Tex.Civ.App.—San Antonio 1969, no writ).

While the leases require the payment of delay rentals if there is no production during the primary term, the 1968 lease amendment in paragraph II(A)(5) deletes the delay rental payments provision of the leases and replaces it with the following:

\* \* \* \* \* \*

This lease shall not terminate at the end of the primary term or thereafter if Lessee (a) pays Minimum Annual Advance Royalty for the ensuing year; (b) is conducting Operations; or (c) does both.

\* \* \* \* \* \*

The minimum annual advance royalty payment is the numerical equivalent of the delay rentals paid on the combined acreage

of the 1964 and 1966 leases. Additionally the lease amendment provided:

\* \* \* \* \* \*

This lease may not be maintained for a period longer than ten (10) years from the date hereof unless at or prior to such time Mining Operations are or have been conducted.

We read "the date hereof" as referring to when the lease amendment was signed (December 6, 1968).

Mining operations are defined in the 1968 lease amendment:

'Mining Operations' or 'Operations' shall mean any one or more of the following: moving equipment, materials or personnel onto the property covered by this lease or Other Lands in preparation for or the conduct of exploration, evaluation, mining, processing, milling, treating, handling and transportation operations, or any other operation permitted under this lease on the leased premises; and shall be considered as being conducted or carried on continuously hereunder if not more than ninety (90) days shall lapse between cessation, abandonment or completion of all of the Operations then being carried on or conducted hereunder and the commencement, continuation or resumption of one or more Operation hereunder.

In points of error one and two, defendant argues the plaintiffs' motion for summary judgment should not have been granted because a genuine issue of material fact exists or, alternatively, defendant's motion should have been granted because, as a matter of law, the leases were in full force and effect. Finally, assuming the plaintiffs' motion for summary judgment was correctly granted, defendant argues he should be reimbursed the minimum annual royalty payments made to the Perezes after 1971.

Four wells were drilled: one in 1966, two in 1970, and one in 1974, all dry holes. Clark paid the Perezes from 1966 to 1978 the sum of $16,148.70. Annually, this amounted to $1,052.30 or $1.00 per acre.

In 1979, the Perezes refused to accept further payment from Clark. In January 1980, they executed a lease to Howard K. Sanders as lessee covering the same land leased to Clark. In May 1980, the Perezes brought a declaratory judgment action to have the leases with Clark terminated as a cloud on their title. In July 1982, Clark purchased the lease from Sanders for $17,000. This 1980 lease provided for a one-fifth royalty interest to lessors, whereas the prior leases gave them a one-eighth royalty interest.

In their motion for summary judgment, plaintiffs requested the trial court to declare that the 1964 and 1966 leases with the 1968 lease amendment have terminated. In his motion, defendant requested the trial court to determine that the leases and lease amendment are in full force and effect; that the Sanders' lease is of no force and effect; and that defendant be awarded the $17,000 paid to Sanders to regain his lease *or, alternatively*, if the Sanders' lease is in effect, that plaintiffs return monies they accepted as minimum annual advance royalties from that point at which the leases are determined to have terminated.

The judgment of the trial court terminated the leases between plaintiffs and defendant, and established the 1980 lease between plaintiffs and Sanders as a valid and existing lease. It decreed Clark is the present owner and holder of the lease. The judgment also denied all other relief not expressly granted, thereby denying by implication defendant's requests for reimbursement for the payments made after the termination of the lease.

Since both parties filed motions for summary judgment, it is incumbent on this appellate court to determine all questions presented, including the propriety of the order overruling the losing party's motion for summary judgment. *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396, 400 (1958). An appellate court is authorized to render such judgment as the trial court should have rendered. *Holmquist v. Accidental Life Insurance Co. of California*, 536 S.W.2d 434, 438 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). When parties, as here, file opposing motions for summary judgment, each movant has the burden to prove that he is entitled to judgment as a matter of law, and neither party can prevail because of the failure of the other to discharge his burden. *Miller & Freeman Ford, Inc. v. Greater Houston Bank*, 544 S.W.2d 925, 926 (Tex.1976). The burden is on the movant to show, as a matter of law, all elements constituting his cause of action or defense. All doubts as to the existence of a genuine issue or material fact are resolved against the movant. *Great American Reserve Insurance Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

Plaintiffs present three arguments why the 1964 and 1966 leases and the 1968 lease amendment have terminated: (1) the lease amendment does not amend the habendum clause of the original leases; (2) the dry hole clause in itself, as a matter of law, also terminates the lease; and (3) since defendants did not timely pay minimum advance royalty payments in 1972, the lease also terminated as a matter of law.

Defendant contends the lease amendment extended the term of the lease from five to ten years and so long thereafter as mining operations are carried out; that so long as minimum advance royalty payments are made or there are mining operations, it is unnecessary to effectuate production; that plaintiffs waived their objection to the late payment of the 1972 payment as they readily accepted it late; and that plaintiffs should be estopped from arguing that the leases have terminated, since they accepted payment through 1978.

Neither plaintiffs nor defendant argue there is ambiguity in the leases or lease amendment. We also find the intent of the parties is clearly expressed in these instruments and only one reasonable interpretation can be attributed to the clauses in question; therefore, no ambiguity exists in the leases or in the lease amendment. *Whelan v. Manziel*, 314 S.W.2d 126, 132 (Tex.Civ.App.—Texarkana 1958, writ ref'd n.r.e.).

When there is no ambiguity, only the question of the construction to be given the lease remains. *Pan American Petroleum Corp. v. Robinson*, 405 S.W.2d 698, 700 (Tex.Civ.App.—Eastland 1966, writ ref'd n.r.e.). A question of construction is properly a question of law for the court. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968). Such a question of law may be properly resolved in a summary judgment. *Clutts v. Southern Methodist University*, 626 S.W.2d 334, 335 (Tex.App.—Tyler 1981, no writ); TEX.R.CIV.P. 166–A(c).

In construing a lease it is the duty of the court to seek the intention of the parties by considering all the provisions of the lease and by harmonizing, if possible, those provisions which appear to be in conflict, using the applicable rules of construction. *McMahon v. Christmann*, 157 Tex. 403, 303 S.W.2d 341, 344 (1957).

The question in the case is whether paragraph II(A)(5) of the lease amendment modifies the habendum clause of the original leases, hence removing the five year limitation on the term of the lease if no oil and gas is produced during the primary term.

It is well settled that an oil and gas lease in Texas will be strictly construed against the lessee. *Stephenson v. Stitz*, 255 S.W. 812, 813 (Tex.Civ.App.—San Antonio 1923, writ dism'd). With an irreconcilable conflict between the habendum clause and recitals in a subsequent amendment, the recitals must yield. *Kokernot v. Cladwell*, 231 S.W.2d 528, 531 (Tex.Civ.App.—Dallas 1950, writ ref'd). In construing oil and gas leases, the habendum clause will control unless properly modified by other provisions, and the fixed term therein stated should not be extended by words found elsewhere in the lease not certainly directed to the modification of the habendum clause. *Gulf Oil Corp. v. Southland Royalty Co.*, 496 S.W.2d 547, 552 (Tex.1973).

On the other hand, this is not to say that an habendum clause can never be modified, as a subsequent instrument may provide elsewhere for the enlargement of the term stated in the habendum. *Gulf Oil, supra*, at 552. It is always a question of determining the intent of the parties from the entire instrument. *Id.*; R. HEMINGWAY, THE LAW OF OIL AND GAS §§ 6.3, 6.4 (1971).

Paragraph II(A)(5) of the lease amendment does not amend the habendum clause of the original leases. In this paragraph is the phrase "primary term" which we construe as referring to the habendum clause of the original leases. The primary term is for five years duration. Nor does the lease amendment delete the habendum clause of the original leases.

When there is a certain answer as to the term of the lease, that answer cannot be changed with words elsewhere not specifically directed to the term of the lease. *Gulf Oil Corp., supra*, at 552. Lessors' acceptance of payments after the primary term of the lease does not estop them from complaining that the lease has in fact terminated. *See Watson v. Rochmill*, 137 Tex. 565, 155 S.W.2d 783, 785 (1941). After the primary term, the lease could have been prolonged only with actual production, of which there was none. R. HEMINGWAY, *supra*, § 6.4; 3 H. WILLIAMS, OIL AND GAS LAW, § 604.7 (1981). Accordingly, we find this lease automatically terminated at the end of its five year term on January 19, 1971. Therefore, we need not address plaintiffs' contentions that the dry hole clause or the failure to make the 1972 payment on time terminated the leases. Points of error one and two are overruled.

In his third point of error, defendant argues that he is entitled to reimbursement of minimum advance royalty payments made annually from the date of the termination of the lease to the date the plaintiffs actually refused to accept payment (1972–1978).

We can find no Texas case addressing a lessee's right of reimbursement if he continues payments to a lessor *after* termination of the lease. However, we believe that general principles of equity apply

in this instance. One seeking the cancellation of an instrument must restore the original status; one cannot repudiate an instrument and simultaneously retain the payments received under that instrument. *Texas Co. v. State,* 154 Tex. 494, 281 S.W.2d 83, 91 (1955). Consequently we sustain the point and order that lessors reimburse lessees for all minimum advance royalty payments made subsequent to the termination of the lease on January 19, 1971. Accordingly, we affirm the judgment as to termination of the lease and reverse and render the judgment as to reimbursement. Costs are taxed seventy-five percent (75%) to appellant and twenty-five percent (25%) to appellees.