EMSCOR, INC. and Walter P.
Manning, Individually,
Appellants,

v.

ALLIANCE INSURANCE GROUP, Alliance Syndicate, Inc., and Alliance
General Insurance, Appellees.

No. C14–89–01128–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 17, 1991.

Rehearing Denied Feb. 14, 1991.

Donald B. McFall, Matthew S. Muller and Jill A. Hurd, Houston, for appellants.

Linda M. Cipriani and Michael O. Connelly, Houston, for appellees.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

CANNON, Justice.

Appellants Emscor, Inc., and Walter P. Manning (Emscor) brought a declaratory judgment action to determine whether appellees Alliance Insurance Group, Alliance Syndicate, Inc., and Alliance General Insurance (Alliance) were required to defend Emscor in three lawsuits. The trial court granted summary judgment in favor of Alliance and denied Emscor's motion for summary judgment. We affirm.

On February 28, 1987, Stone Mountain Insurance Company issued a $500,000.00 general liability policy to Emscor. That same day, Alliance issued a $500,000.00 excess insurance policy to Emscor. Both policies were effective through February 28, 1988. On April 28, 1987, a construction crane collapsed killing two men, injuring another, and causing substantial property damage. Emscor was subsequently named as a defendant in three different lawsuits. On July 26, 1988, during the pendency of the three lawsuits, Stone Mountain was placed in receivership. At some point during that time, Emscor submitted legal bills to Alliance in connection with the wrongful death action styled, *Cindy R. Ketcher v. Linbeck Construction Co.* On January 29, 1989, Emscor filed this declaratory judgment action based upon Alliance's refusal to defend Emscor in the wrongful death action.

On May 22, 1989, Alliance moved for summary judgment claiming it did not have a duty to defend Emscor in the *Ketcher* suit until the Stone Mountain policy limits were exhausted. Alliance argued its position was supported by the unambiguous, express terms of the excess insurance policy it issued to Emscor. Emscor filed its cross-motion for summary judgment claiming the express terms of the Alliance policy incorporated the terms of the Stone Mountain policy and, therefore, required Alliance to defend Emscor in the Ketcher suit, as well as in two other suits arising from the same accident. On August 16, 1989, the trial court entered a final judgment granting Alliance's motion for summary judgment and denying Emscor's cross-motion for summary judgment.

In two points of error, Emscor contends the trial court erred in granting Alliance's motion for summary judgment and in overruling Emscor's cross-motion for summary judgment. Despite ambiguity in the Alliance policy, Emscor contends Alliance owed a duty to defend Emscor when the primary insurance carrier, Stone Mountain, became insolvent.

When both parties move for summary judgment and one such motion was granted and the other denied, the appellate court should determine all questions presented including whether the losing party's motion should have been overruled. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). A movant for summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In reviewing summary judgment proof, evidence favorable to the non-movant is taken as true, the court indulging all inferences and resolving all doubts in the non-movant's favor. *Id.* When parties file opposing mo-

tions for summary judgment, neither party can prevail merely because of the failure of the other to discharge his burden. *See Clark v. Perez,* 679 S.W.2d 710, 713 (Tex. App.—San Antonio 1984, no writ).

Courts follow the well established rule that insurance policies are strictly construed in favor of the insured to avoid exclusion of coverage. *Puckett v. U.S. Fire Insurance Co.,* 678 S.W.2d 936, 938 (Tex.1984). That rule does not apply, however, when the term in question is susceptible of only one reasonable construction. *Id.* In the absence of ambiguity, courts interpret insurance contracts like other contracts. Whether a contract is ambiguous is a question of law for the court. If a written instrument is worded so a court can properly give it a certain or definite legal meaning, it is not ambiguous. A contract is ambiguous only when the application of pertinent rules of interpretation results in genuine uncertainty as to which one of two meanings is proper. All parts of insurance contracts are to be taken together, and such meaning shall be given to them as will effectuate to the fullest extent the intention of the parties. Courts must interpret the meaning of the language actually used in a contract and give effect to the intention of the parties as expressed in the writing. If the language is plain, it must be enforced as written. *State Farm Lloyds, Inc. v. Williams,* 791 S.W.2d 542, 543 (Tex.App.—Dallas 1990, no writ).

The Coverage provision in the Insuring Agreement of the Alliance policy provides:

> Coverage: To indemnify the Insured for such loss as would have been payable under all of the terms of the Liability Coverages afforded by the underlying policies listed in Item 5 of the Declarations if the limits of liability stated in Item 4 of the Declarations were available under the underlying policies in addition to the limits of liability stated in Item 5 of the Declarations (hereinafter called the "underlying limits"); *provided the Company's obligation hereunder shall apply only to loss in excess of such underlying limits.* (Emphasis added).

There are no underlying policies listed in Item 5 of the Declarations. Only Item 4 refers to the "schedule of underlying insurance attached." The attached schedule of insurance is the Stone Mountain policy. That policy provides that "the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage." According to Emscor, Alliance's Coverage provision incorporates the duty to cover and defend against losses that would have been covered by Stone Mountain absent its insolvency.

The Coverage provision clearly states the basic risks covered by Alliance's policy. Those risks are the same risks covered by Stone Mountain's policy. Alliance's obligations, however, *"shall apply only to loss in excess of such underlying limits."* In addition, the Maintenance of Underlying Insurance condition also does not incorporate Stone Mountain's duty to defend as Emscor contends. That condition states the Alliance "policy is subject to the same terms, exclusions, and conditions, as are contained in the underlying policies, *except as otherwise provided herein."* In other words, Alliance's excess policy will cover the same type of losses as Stone Mountain's underlying policy. Furthermore, when reading the Coverage provision and the Other Insurance condition together, they do not incorporate the Stone Mountain policy as Emscor asserts. The Other Insurance condition provides:

> Other Insurance: If other valid and collectible insurance with any other insurer is available to the insured covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, *the insurance afforded by this policy is in excess of and shall not contribute with such other insurance.* (Emphasis added).

Emscor reasons that since Stone Mountain is insolvent, there is not "valid and collectible insurance available" and, therefore, the Alliance policy applies. On the contrary, this condition simply states the Alliance policy is in excess of other insurance available and does not require or imply that the Stone Mountain policy must be

collectible to determine whether the underlying limit has been exhausted. *See Steve D. Thompson Trucking v. Twin City Fire Ins. Co.,* 832 F.2d 309, 311 (5th Cir.1987).

Emscor also argues the Limits of Liability–Underlying Limits provision and the Attachment of Liability condition are inconsistent. The Limits of Liability–Underlying Limits provision states that "liability under the policy shall attach to [Alliance] after the underlying insurers *have paid or held to pay* the full amount of their respective loss liability as described in the underlying limits." The Attachment of Liability condition, according to Emscor, requires the underlying insurer only to *admit* liability for the underlying limits. Emscor's reading of this condition ignores the "final judgment" language contained therein. The condition specifically provides:

> Attachment of Liability: Liability under this policy shall not attach unless and until the underlying insurers shall have *admitted liability* for the underlying limits *or* unless and until the Insured *has by final judgment been adjudged to pay* a sum which exceeds such underlying limits. (Emphasis added).

Emscor also refers to Endorsements # 2 and # 4 as mandating a duty to defend. Endorsement # 2 provides that Alliance's deductible may be chargeable by payment of legal costs as well as other costs. Endorsement # 4 mandates supplementary payments including defense costs. Both of these provisions, however, apply only when the underlying policy limits are exhausted. Finally, the preface to Endorsement # 3 states that "in the event of conflict" between the Alliance policy and the Stone Mountain policy, the Alliance policy "shall apply." The endorsement also adds a condition to the policy. That condition is titled "Bankruptcy or Insolvency of Underlying Primary Insurers" and provides that *"in the event of bankruptcy or insolvency of a primary insurer, [Alliance] shall be liable only to the same extent as it would have been had the bankruptcy not occurred."* It further states that *"in no event shall [Alliance] be required to substitute for a primary insurer."*

Emscor contends this provision is a policy exclusion which Alliance waived as a defense because Alliance failed to plead it under Tex.R.Civ.P. 94. *Mid–United Contractors v. Providence Lloyds Ins. Co.,* 754 S.W.2d 824, 825 (Tex.App.—Fort Worth 1988, writ denied). Alliance, on the other hand, contends this provision is a condition precedent to recovery on the policy which Alliance was not required to plead under rule 94. *Trevino v. Allstate Ins. Co.,* 651 S.W.2d 8, 13 (Tex.App.—Dallas 1983, writ ref'd n.r.e.).

Regardless of Endorsement # 3, we find that Alliance provided liability coverage to Emscor in excess of the liability coverage provided by Stone Mountain. Reading the contract as a whole, there is no other reasonable construction of the terms. In *Harville v. Twin City Ins. Co.,* 885 F.2d 276, 279 (5th Cir.1989) the Court stated:

> Excess liability insurers contract to provide inexpensive insurance with high policy limits by requiring the insured to contract for primary insurance with another carrier. The premium is also held down by the fact that the duty to defend rests primarily on the primary insurer, falling on the excess liability carrier only when the primary carrier is not to defend because the loss is not covered by the primary policy. If excess liability carriers are required to defend in cases where the primary carrier would have defended except for insolvency, then the risk of the primary carrier's insolvency is placed on the excess carrier. Such a "rule would require insurance companies to scrutinize one another's financial well-being before issuing secondary policies. The insurance world is complex enough; to impose this additional burden on companies such as [the excess carrier] would only further our legal systems lamentable trend of complicating commercial relationships and transactions."

885 F.2d at 279 (citing *Continental Marble & Granite v. Canal Insurance Company,* 785 F.2d 1258, 1259 (5th Cir.1986)).

In the absence of Texas caselaw, we follow the Fifth Circuit in holding that excess liability insurers have no duty to de-

fend an insured in the event of the insolvency of the insured's primary general liability carrier. *Mission National Ins. Co. v. Duke Transp. Co., Inc.,* 792 F.2d 550 (5th Cir.1986); *Continental Marble & Granite v. Canal Ins. Co.,* 785 F.2d 1258 (5th Cir.1986); *Steve D. Thompson Trucking v. Twin City Fire Ins. Co.,* 832 F.2d 309 (5th Cir.1987); *Harville v. Twin City Fire Ins. Co.,* 885 F.2d 276 (5th Cir.1989). Accordingly, we overrule appellant's two points of error and affirm the judgment of the trial court.