In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No.
06-10-00019-CR

                                                ______________________________

 

 

 

                                                                        IN
RE:

JODY
BELCHER

 

 

                                                                                                  


 

                                                                                                                            


                                                     Original
Mandamus Proceeding

 

                                                                                                  


 

 

 

 

                                          Before
Morriss, C.J., Carter and Moseley, JJ.

                                        Memorandum
Opinion by Chief Justice Morriss

                                                                              

                                                                              








                                                      MEMORANDUM
OPINION

 

            Jody Belcher was sentenced for a
conviction in Harrison County.  He filed
a motion for judgment nunc pro tunc requesting the trial court “to set the
record straight as to the flat time served and credited.”  Claiming he was denied fifty-six days of time
served, he asked the trial court to “forward a corrected copy of his time
credits to the . . . Institutional Division in Huntsville, Texas.”  Belcher’s pro se petition for writ of
mandamus asks this Court to correct the judgment “to reflect the appropriate
time credit.”  

            Unfortunately, Belcher’s petition
fails to include a record, including any judgment of conviction and the name of
the trial judge.  Further, there is no
indication that a ruling has been made on the motion for judgment nunc pro
tunc.  

            Mandamus is an extraordinary remedy
that issues only to correct a clear abuse of discretion or violation of a duty
imposed by law when no other adequate remedy by law is available.  State
v. Walker, 679 S.W.2d 484, 485 (Tex. 1984). 
Due to the nature of this remedy, it is Belcher’s burden to properly
request and show entitlement to the mandamus relief.  See
generally Walker v. Packer, 827
S.W.2d 833, 837 (Tex. 1992) (orig. proceeding); Barnes v. State, 832 S.W.2d 424, 426 (Tex. App.—Houston [1st Dist.]
1992, orig. proceeding) ("Even a pro se applicant for a writ of mandamus
must show himself entitled to the extraordinary relief he seeks."). 

 

 

 

            The absence of a mandamus record
prevents us from evaluating the circumstances of this case and, consequently,
the merits of Belcher’s complaints.  Tex. R. App. P. 52.7; Barnes, 832 S.W.2d at 426.  Therefore, we must deny his petition for writ
of mandamus.  

                                                                        

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date
Submitted:          February 16, 2010

Date
Decided:             February 17, 2010

 

Do Not
Publish

 

 

 

 






te under adverse possession. In support of
its motion for summary judgment, HPL filed three affidavits as to the continuous use of this
well site from the time of HPL's acquisition until the time the well was plugged in 1996. The
continuous use described in these affidavits included the type of use required by the
Collateral Agreement ("drilling, reworking, storage, injection, repressuring, or production")
to prevent termination. 

 The Taubs' summary judgment evidence included the deposition of Lucius Geer,
who testified that, based on his review of certain "G9 records" filed with the Railroad
Commission during the time period 1977-1980, a 365-consecutive day period passed when
HPL failed to make one of the uses required by the Collateral Agreement to prevent
termination. In response, HPL attacks Geer's qualifications as an expert and the Taubs'
claim that the "G9 records" show a nonuse for the requisite time. However, HPL's attacks
go to the weight rather than to the admissibility of Geer's testimony. Further, HPL has not
directed us to any place in the summary judgment record where it objected to Geer's
deposition on the bases now asserted. Geer's deposition testimony is sufficient to raise
a genuine issue of material fact regarding the 6M site. 

 Nonetheless, HPL also raised the defense of equitable estoppel and correctly
contends the Taubs' response to its motion for summary judgment does not address this
argument. Where a nonmovant fails to respond to a ground for summary judgment, the
sole issue on appeal is whether the movant's summary judgment evidence was legally
sufficient. Johnson v. Levy, 725 S.W.2d 473, 476 (Tex. App.-Houston [1st Dist.] 1987, no
writ); Cox v. Bancoklahoma Agri-Serv. Corp., 641 S.W.2d 400, 402 (Tex. App.-Amarillo
1982, no writ).

 Equitable estoppel precludes the person estopped, because of that person's act,
conduct, or silence, from asserting a right which he or she otherwise would have. Forest
Springs Hosp. v. Ill. New Car & Truck Dealers Ass'n Employees Ins. Trust, 812 F.Supp.
729, 733 (S.D. Tex. 1993). As a general rule, equitable estoppel has been invoked by
mineral producers as an affirmative defense in situations, such as here, where there has
been a claimed violation of the mineral lease-usually some failure to engage in a required
production activity-which would result in cancellation of the lease, and yet the lessors
continue to receive payments or other benefits under the lease. Texas courts recognized
this principle as early as 1923:

 It is true that time is of the essence of oil and gas leases; that they are to be
construed most strongly against the lessee, . . . . Notwithstanding these
rules, however, the lessor, by practical construction, by permitting the
expenditure of large sums of money in development and by the acceptance
of royalties, however small, by his subsequent conduct . . . may waive his
right to declare a forfeiture. 


Masterson v. Amarillo Oil Co., 253 S.W. 908, 914-15 (Tex. Civ. App.-Amarillo 1923, writ
dism'd). 

 In Clark v. Perez, 679 S.W.2d 710 (Tex. App.-San Antonio 1984, no writ), cited by
the Taubs, the court states one cannot repudiate an instrument while simultaneously
retaining the payments received under the instrument. Id. at 715. In Young v. Amoco
Prod. Co., 610 F.Supp. 1479 (E.D. Tex. 1985), aff'd, 786 F.2d 1161 (5th Cir. 1986), the
plaintiffs continued to receive payments from one of the units despite claims the lease in
question had terminated. The court pointed out it is essential to the doctrine of equitable
estoppel that the person to be estopped had full knowledge of the real facts at the time of
the occurrence of the representation, concealment, or other conduct alleged to be the
basis of estoppel. Id. at 1487. The court further opined that, as such, the doctrine of
equitable estoppel contemplates it would be unconscionable to permit a person to maintain
a position inconsistent with one in which he has acquiesced, or of which he has accepted
the benefits with knowledge or notice of the facts or rights involved. When the basis of the
estoppel is the acceptance of benefits by the party to be estopped, the need for application
of the doctrine is supported by the rule that a person who accepts and retains the benefits
of a particular transaction will not thereafter be permitted to avoid its obligations or
repudiate the disadvantageous position. Id. The court further noted the assertion of a
waiver must be supported by proof of an intentional relinquishment of a known right or of
intentional conduct on the part of that person sufficient to warrant an inference of the
relinquishment of the right. Waiver by implication will be applied only to prevent fraud or
inequitable consequences and, thus, an implied waiver must be evidenced by clear,
unequivocal, and decisive acts from which can be inferred the intention to relinquish the
right. Id. at 1488-89. 

 HPL contends the "G9 reports" on file with the Railroad Commission, which
allegedly demonstrate inactivity such as would forfeit its rights in the surface at the 6M well
site, constituted notice to the Taubs, the surface owners. HPL points out the Taubs
continued to accept payments until the 6M well site was plugged and released with full,
albeit constructive, knowledge of the inactivity at well site 6M. 

 In Shivers v. Texaco Exploration & Prod., Inc., 965 S.W.2d 727, 735 (Tex.
App.-Texarkana 1998, pet. denied), we held that certain records of the Texas Railroad
Commission constituted "constructive notice" because they were matters of public record. 
Further, the Texas Supreme Court, speaking to the issue of whether records filed with the
Railroad Commission constitute "constructive notice," stated, "When the legal device of
constructive notice is employed, a person is deemed to have actual knowledge of certain
matters. Constructive notice creates an irrebuttable presumption of actual notice." Neel,
982 S.W.2d at 887. Citing Shivers, the Texas Supreme Court was only willing to conclude
that some records of the Railroad Commission, in certain circumstances, may provide
constructive notice. Id. at 887 n.1. However, the Texas Supreme Court continued, "filings
and other materials publicly available from the Railroad Commission are a ready source
of information, and a cause of action for failure to provide that same information is not
inherently undiscoverable." Id. at 887.

 While the "G9 records" of the Railroad Commission, standing alone, did not
constitute constructive notice to the Taubs, as constructive notice is viewed by the Texas
Supreme Court, we find these filings, combined with the lack of due diligence required of
the owners of land subject to mineral interests, as discussed above, did provide the
requisite notice, requiring the Taubs to take some action to protect their rights. Even with
this notice, the Taubs continued to accept the benefits from the mineral interests on their
property. We hold HPL established the affirmative defense of equitable estoppel.

 The Taubs also contend the trial court erred in holding HPL established by its
summary judgment evidence that it has title to its leasehold interest under a theory of
adverse possession. In Hill, 964 S.W.2d at 134, the court held mineral interests and oil
and gas leaseholds are treated as real property interests, and are subject to the rules
related to real property. Therefore, we hold the adverse possession rules are applicable
to such interests. 

 In its motion for summary judgment, HPL specified only the twenty-five-year
limitations period found in Tex. Civ. Prac. & Rem. Code Ann. § 16.028 (Vernon 1986). HPL
contends the Taubs' arguments concerning this defense are new on appeal and should be
disregarded. We agree. Therefore, as previously noted, the only proper inquiry is the legal
sufficiency of HPL's summary judgment evidence to establish adverse possession.

 A party claiming title by adverse possession must, at a minimum, prove: 1) actual
possession of the disputed property; 2) under a claim of right; and 3) which is adverse or
hostile to the claim of another. Sarandos v. Blanton, 25 S.W.3d 811, 815 (Tex.
App.-Waco 2000, pet. denied); see also Haby v. Howard, 757 S.W.2d 34, 37 (Tex.
App.-San Antonio 1988, writ denied). We hold HPL's summary judgment evidence is
legally insufficient because, while it demonstrated the required possession for the twenty-five-year period, it fails to show the possession was hostile for that requisite period. 

 Assuming the "G9 reports" establish the 365 consecutive days of nonuse such as
would constitute a forfeiture of HPL's rights, such period of nonuse would have ended, at
the outside, in 1980. Before that time, the possession was not hostile; it was under the
Unit Agreement, as supplemented by the 1971 partial release designating certain well sites
where production was to continue, and under the terms of the Collateral Agreement. Only
after the passage of the 365-day period in 1980 did the possession become hostile. 

 In order to establish adverse possession, the claimant must demonstrate, among
other things, that his or her possession of the land was hostile to the owner and that it was
consistently and continuously so for the duration of the statutory period. The test of
hostility is whether acts performed by the claimant on the land, and the use made of the
land, was of such a nature and character as to reasonably notify the true owner of the land
a hostile claim was being asserted to the property. Templeton v. Dreiss, 961 S.W.2d 645,
670 (Tex. App.-San Antonio 1998, pet. denied). 

 Since the summary judgment evidence fails to establish hostile possession for the
requisite time period, we hold this affirmative defense has not been established by HPL.

Trespass by Replacing Twelve-Inch Pipeline


 The Taubs contend the trial court erred in granting HPL's motion for summary
judgment on the issue of whether HPL had the right to remove an existing twelve-inch
pipeline in 1996 and replace it with a twenty-inch pipeline. In its motion for summary
judgment, HPL contended that the original lease agreement, entered into in the 1930s
permitting the laying of a pipeline, and the 1966 Unit Agreement, executed concurrently
with the Collateral Agreement, authorized the producer to use as much of the surface or
subsurface area as reasonably necessary for unit operations. In addition, HPL submitted
an expert's affidavit regarding the necessity of the installation of the larger pipeline, which
was to accommodate increased flows. 

 In response to the motion, the Taubs contended only that the pipeline width is
controlled by the Collateral Agreement. They did not challenge the expert witness
testimony. However, on appeal, the Taubs cite to a specific section of the Collateral
Agreement to which they did not refer in their response to the motion filed with the trial
court. They also make other contentions as to why the trial court erred in granting
summary judgment on this issue. 

 Issues not expressly presented to the trial court by written motion, answer, or other
response cannot be considered on appeal as grounds for reversal. Tex. R. Civ. P. 166a(c);
City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 674-75 (Tex. 1979); Gulf Ins.
Co. v. Clarke, 902 S.W.2d 156, 158 (Tex. App.-Houston [1st Dist.] 1995, writ denied). 
Additional grounds urged on appeal in opposition to HPL's motion are not appropriately
considered by the court. On this ground alone, we may not consider arguments raised for
the first time on appeal by the Taubs.

 Notwithstanding, we have reviewed the case of Houston Pipe Line Co. v. Dwyer,
374 S.W.2d 662 (Tex. 1964), cited by the Taubs, and find it distinguishable from the
situation presented in this case. In Dwyer, the plaintiffs, owners of the servient tenement,
sought declaratory and injunctive relief against the pipeline company's removal of an
eighteen-inch low-pressure pipeline from its easement, originally installed in 1926, and
replacement of that line in 1959 with a thirty-inch high-pressure pipeline. The court noted
the subject easement agreement contained no specifications for the size of the pipeline
and did not prescribe a metes and bounds description for the easement. The court granted
the relief, stating, "[w]e hold that when defendant constructed its 18-inch pipeline with the
consent and acquiescence of the plaintiff, the extent of defendant's [pipeline company's]
easement rights under the 1926 agreement became fixed and certain." Id. at 666. 

 As pointed out by HPL, the situation presented here is significantly different. The
original lease agreement signed in the 1930s authorized a pipeline. The Unit Agreement,
entered into shortly before the Collateral Agreement in 1966, authorized the operator to
use so much of the surface and subsurface as necessary to carry out its operations. 
Further, HPL cites to a portion of the Collateral Agreement which limited the size of the
easement to a maximum of fifteen feet in width. Unlike Dwyer, the summary judgment
evidence does not show that, by installing a twelve-inch pipeline, HPL's easement rights
became fixed and certain, preventing the installation of the larger line. This issue is
overruled.

 Having determined that HPL was entitled to judgment on one or more of the grounds
alleged in its motion, we affirm the summary judgment.




 Donald R. Ross

 Justice


Date Submitted: February 27, 2002

Date Decided: April 10, 2002


Publish

1. The essential elements of actionable negligence are: 1) the existence of a legal
duty owed by one person to another to protect the latter against injury; 2) breach of that
duty; and 3) damages 4) proximately resulting from that breach. 53 Tex. Jur. 3d
Negligence § 5 (1997).